UNITED STATES of America

v.

ST. JAMES PARISH, LOUISIANA, et al.

No. 91–1951.

United States District Court,
E.D. Louisiana.

April 6, 1992.

On Motion for Leave to File
Second Amended Complaint
April 15, 1992.

Stephen Mark Gallinghouse, U.S. Atty's Office, New Orleans, La., for U.S.

Sandra A. Vujnovich, Brook, Morial, Donna DiMartino Fraiche, Richard M. Ireland, Jr., Locke, Purnell, New Orleans, La., for St. James Parish, Louisiana.

James Anthony Babst, Kathleen S. Plemer, Rebecca A. Stulb, Chaffe, McCall, New Orleans, La., for IHS River Region Hosp. of Vacherie, Louisiana, Inc.

CHARLES SCHWARTZ, Jr., District Judge.

Pursuant to defendants' Motion to Establish "Then Date" and plaintiff having filed formal response thereto, and further upon advice of counsel that there is no necessity for the oral hearing scheduled April 1, 1992, the matter was submitted on the briefs. By its motion to establish "then date", defendants seek judicial determination of the date from which the Hill–Burton recovery amount due and owing to the Government should be calculated. The Hill–Burton facility at issue, West St. James Parish Hospital, closed or ceased operations on March 31, 1984, and then, later was transferred to IHS River Region Hospital of Vacherie Louisiana, Inc. ("IHS") [the transferee for-profit organization] on September 17, 1986.

Defendant St. James Parish (hereinafter "the Parish") takes the position that the appropriate "then date" is the first triggering event, closure of the facility on March 31, 1984. Plaintiff the United States of America (hereinafter "the Government") counters that September 17, 1986 (the date of the facility's transfer to a for-profit organization) is the appropriate "then date" from which to base the calculation of the recovery amount due. The Hill–Burton Act 42 U.S.C. § 291i provides no definitive guidance, and the jurisprudence is equally elusive on the subject, although clearly under *United States v. St. John's General Hospital,* 875 F.2d 1064 (3rd Cir.1989) which like the instant case involved multiple triggering events, the Government is entitled to only one recovery.

The Government originally instituted these proceedings seeking recovery against St. James Parish (hereinafter "the Parish"), pursuant to 42 U.S.C. § 291i(a)(2) based on the closure of West St. James Parish Hospital within 20 years of its construction, which was partially federally funded. Subsequently, the Government amended its original pleading to name IHS as an additional defendant, and is presently seeking recovery pursuant to 42 U.S.C. § 291i(a)(1) against IHS and the Parish, jointly and severally, based upon the transfer of the hospital to a for-profit entity, within 20 years of its construction.

I. Factual Background.

By letter dated September 24, 1985,[1] responding to notification of the Parish voted to close West St. James Parish Hospital (a Hill–Burton facility, hereinafter referred to as "the Facility"),[2] the Department of Health and Human Services (DHHS) informed the Parish that it was entitled to a Hill–Burton recovery as a result of the closure of the Facility on March 31, 1984 and made demand on the Parish for $621,-962 stating in pertinent part:

The West St. James Parish Hospital received $442,202 in construction funds under the Hill–Burton grant program and the project opened in October 1974. At

---

1. *See,* Correspondence to the Parish by DHHS [Defendant's Exhibit "D1"].

2. *See,* Correspondence addressed to DHHS and dated March 5, 1984, March 7, 1984, and March 29, 1984 [Defendant's Exhs. "A", "B", and "C"].

the time of request for financial assistance, the applicant assured the Federal Government that the facility would remain under their control and be used for eligible purposes for 20 years. Under the authority of Section 609(a)(2) of the Public Health Service Act, the Federal Government is entitled to recover certain funds as a result of the closure of West St. James Parish Hospital on March 31, 1984.

The recovery amount has been determined to be $621,962. This amount was computed by using a standard computation method in accordance with established Federal administrative policy (see enclosed calculations).[3]

\* \* \* \* \* \*

If the check is not mailed within 75 days of the date of this letter, interest will accrue on the amount of the recovery from the 76th day up to, but not including, the date of the payment at the rate of 10.69 percent per annum....[4]

The "then date", which was chosen by the Government for purposes of calculating of the recovery amount demanded [i.e., $621,962] as reflected in the recovery calculation, was March 31, 1984.[5] The document authored by representatives of the Government entitled "Index of Project Costs Method" [Defendant's Exh. "D2"] reads in pertinent part:

| PROJECT AND BCI INFORMATION | DATA |
|---|---|
| (a) OPENING DATE: (begins useful life/depreciation on construction and equipment) | 10/1/74 |
| (b) 'THEN' DATE: (date facility ceased to be eligible)[6] | 3/31/84 |

On June 16, 1986 and on November 13, 1986, the Parish received second and third demands in the original recovery amount demanded [$621,962] plus interest. In the interim and as of September 17th, 1986, the Parish entered into a Lease/Purchase Agreement [Defendant's Exh. "E"], under which IHS agreed to be responsible for the obligations of the facility under the Hill–Burton Act.[7] As late as July 14th, 1987 and November 14, 1990, DHHS was authoring demands referencing closing the facility on March 31st, 1984 as the triggering event [Defendant's Exhs. "F" and "G"]. The correspondences uniformly refer to a "then date" of March 31st, 1984 [i.e., closure of the facility—the first triggering event].

On May 24th, 1991, the Government instituted the instant action against the Parish for recovery of $621,826 based on the closure of the facility, and seeking interest from December 1985 at the reference rate in effect on 9/27/84. At the time of filing its original complaint, the Government was well aware of the Lease/Purchase Agreement.[8]

With leave of Court the Government amended its complaint adding IHS as a defendant and seeking recovery from IHS and the Parish based upon the lease of the facility on September 17, 1986 [i.e. the second triggering event] and pursuant to section 291i(a)(1). Although the Government recalculated the indebtedness (i.e. the recovery amount) in question based on the transfer date *via* First Amended Complaint, the Government continues to seek interest from the Parish as of December 8,

---

3. At the time DHHS calculated the recovery amount demand of $621,962.00, there were no regulatory guidelines promulgated for performing such a calculation. Regulations were published on March 7, 1986 and included at 42 C.F.R. § 124.701, *et seq.*

4. Defendant's Exh. "D1" [emphasis supplied].

5. *See*, Addendum to the DHHS's September 24th, 1985 Letter, [Defendant's Exh. "D2"].

6. *Id.*

7. Most recently filed in the record of this proceeding is a Consent Judgment, wherein the

Parish has consented to judgment on IHS's cross-claim for indemnity.

8. As of April 1st, 1991 DHHS essentially informed the Parish that it was yet to be decided whether the recovery claim against it would be based on the closure or the later lease/purchase transaction. The Government apparently chose the earlier [closure] date as the basis of its calculation on May 24th, 1991, when it filed its original complaint against the Parish seeking recovery of $621,826.

1985, at the rate of 10.69% per annum (the rate in effect on 9/27/84) in addition to interest from IHS from September 17, 1986 (the transfer date—the second triggering event).

It is not disputed that the hospital at issue was partially constructed with funds awarded to the Parish, under Title VI of the Public Health Service Act, 42 U.S.C. § 291 *et seq.* On October 1, 1974, the hospital opened. The Parish informed the Government that it had voted to close the hospital on March 31, 1984 (i.e., the first triggering event). The Parish did not respond to Government demands for payment, due to the closure of the hospital within 20 years of construction of the facility.

It is further undisputed that on September 17th, 1986, the Parish entered into a Lease/Purchase Agreement with IHS (i.e., the second triggering event). Based on the latter, the Government claims that the Parish and IHS are jointly and severally liable for the recovery amount based on the transfer of the hospital to IHS, a for-profit entity. For obvious reasons, the Government prefers its remedy pursuant to section 291i(a)(1), inasmuch as the transferee [IHS] and the transferor [the Parish] are jointly and severally liable for any recovery thereunder. Moreover, section 291i(a)(1) makes no provision for a "good cause" waiver as does section 291i(a)(2). Yet, the Parish does not here challenge the Government's right to recover pursuant to section 291i(a)(1) but rather seeks only judicial determination of the "then date", the date which forms the basis on any recovery amount calculation.[9]

## II. The Law—As Nebulous As It Is.

■ The Hill Burton Act provides in pertinent part, as follows:

If any facility with respect to which funds have been paid under section 606 shall, at any time within 20 years after completion of construction or modernization—

(1) be sold or transferred to any entity (A) which is not qualified to file an application under section 605, or (B) which is not approved as a transferee by the State agency designated pursuant to section 604, or its successors, or

(2) cease to be a public health center or a public or other nonprofit hospital, outpatient facility, facility for long-term care, or rehabilitation facility,

the United States shall be entitled to recover, whether from the transferor or the transferee (or, in the case of a facility which has ceased to be public or nonprofit from the owners thereof) an amount determined under subsection (c).

42 U.S.C. § 291i(a) [emphasis supplied].

The Government argues that the Parish's motion to establish the "then date" of March 31, 1984 [i.e., the first triggering event—closure within 20 years of construction], forecloses on its remedy pursuant to section 291i(a)(1) as against both IHS and the Parish in this case. The Parish counters, in its Reply Memorandum aforesaid argument "obfuscates" and "misconstrues" its position and ignores the fact that the Parish has consented to judgment on IHS' cross-claim for indemnity. The Court agrees. The Parish patently does not contest the Government's right to pursue multiple parties under the circumstances of this case. Rather the "bone of contention" according to the Parish's is as follows:

What the defendant does contest is the United State's purported right to arbi-

---

**9.** This opinion relies in part on certain representations made on behalf of the Parish in a letter dated April 3, 1992, addressed to the Court which is attached hereto and filed in the record. Specifically, the Court relies on the representations that (1) the Parish is not seeking to go beyond the "then date" issue; (2) the Parish disavows any link between the "then date" and the Government's rights pursuant to its choice of cause Section 291i(a)(1); and (3) the Parish accepts the facts as they exist with regard to a

"good cause" waiver, and that the determination of a "then date" of March 31, 1984, would not compel any different result on the "good cause" waiver defense asserted by St. James Parish. Here also, the Court specifically notes in this regard, that the theory of liability the Government presently pursues in this matter against the Parish and others is pursuant to section 291i(a)(1), which unlike subsection (a)(2), makes no provision for a "good cause" waiver.

trarily select a triggering event to determine the amount of its recovery since nothing in the Hill–Burton Act, the interpreting jurisprudence, or the government's own Administrative Manual for Recovery Provisions contemplates such a haphazard and unfair approach.

Throughout its memorandum, the plaintiff [the Government] asserts that should the defendant's [the Parish's] motion prevail, the United States would be limited to pursuing only the owner of a Hill–Burton facility (i.e., St. James Parish), but not subsequent transferees (i.e., IHS). This argument not only obfuscates defendant's position but also completely ignores the fact that St. James Parish has consented to judgment on IHS' cross-claim for indemnity. St. James Parish does not assert that the government is limited as to whom it may sue, only that the statute provides for but one cause of action and one recovery.

\* \* \* \* \* \*

Finally, the United States carefully avoids explaining under what theory it can recover under § 291i(a)(1) while seeking interest from St. James Parish from 1985 based on § 291[i](a)(2). This illogical and contradictory posture is merely illustrative of the Government's approach to this litigation.[10]

Bearing in mind that nothing herein should be construed in any manner whatsoever, or interpreted so as to foreclose on the Government's right to elect to seek a Hill–Burton recovery under either the provisions of § 291i(a)(1) or § 291i(a)(2) when there exist multiple triggering events, the clear wording of § 291i(c)(1) [i.e., the recovery provision providing for recovery of "an amount bearing the same ratio to the *then value* ..."] when read *in pari materia* with §§ 291i, 291i(a)(1) and (2), 291i(b) and 291i(c)(2), supports the Parish's position.[11] That is, once the Government has calculated a recovery amount, made demand, and filed suit based on same and knowing all the while that yet another "triggering event" has occurred, while it is well within its rights in electing to pursue a subsequent transferee of the facility pursuant to § 291i(a)(1), it cannot recalculate the recovery amount based on the later triggering event having previously determined a "then date" and calculated a recovery amount based on the first [i.e., closure of the facility].

The Court further finds that the definitions set forth in the Administrative Manual For Recovery Provisions which DHHS crafted for use in processing recovery claims under the Act support determination in this regard, and are restated below:

*Then Date:* The date on which a change of status (COS) occurs.

*Change of Status:* The condition created by any voluntary transfer or loss after ownership or control of the grant aided facility that occurs within 20 years after completion of construction, including when the grant aided ceases to be a legal organization qualified under the Federal Act to have filed the grant application *or when the facility ceases to be used for one or more of the purposes for which it was constructed.*

*Then Value:* The value of a grant aided facility *as of the date it ceases to be an*

---

**10.** The Parish's Reply Memorandum at pp. 1, 2, and 4.

**11.** The Parish's argument in this regard in its Original Memorandum in Support of Motion to Determine "Then Date" at p. 12, bears reiteration herein below:

Throughout 42 U.S.C. § 291i, the word "or" is used in numerous places to delineate the two types of events which could cause a facility to fall out of compliance with the Hill–Burton Act [closure or transfer to a not for-profit organization]. In particular, the term

is used in § 291i(a) between subsection (1), the sale or transfer language, and subsection (2), the cease to be language. The same disjunctive, or, is used in 291i(b) with regard to notice provisions, and numerous times in 291i(c)(2) with regard to the interest rate and applicable period in which interest is to accrue. Interestingly, there is no "or" language in § 291i(c)(1) which is the provision providing for the recovery of 'an amount bearing the same ratio as to the then value....'

*eligible facility* determined by an agreement between the Department and any one or all of the following: transferor, transferee, owner, or determined by action in the District Court of the United States for the district in which the facility is situated. For purposes of this guide it is the reproduction value (sale or lease); depreciated reproduction value; or any other value determined by the Department. [emphasis supplied].

The Government argues in its response brief, the language cited above is not inconsistent with its position. The Court disagrees, as the change of status from compliance to noncompliance with the Hill–Burton Act occurred only once on March 31, 1984. Both date before and the date after transfer to IHS [i.e., September 17, 1986], the facility at issue was out of compliance with the Act. Accordingly, there was no change of status at that time. The Government has also failed to explain the absence of the use of the disjunctive, or, § 291i(c)(1) [i.e., the recovery provision providing for recovery of "an amount bearing the same ratio to the *then value* ..."].

Further reflecting upon the Government's argument with respect to the "much deference due the interpretation given a statute by the agency charged with its administration", based on the facts of the instant case the Court is "much perplexed." There were *two* determinations by the agency charged with administration in the case at bar. The first determination occurred at time when the Government was well-aware of the multiple triggering events, and at such time determined the "then date" to be March 31, 1984 (closure of the facility). At a much later point in time and only recently the Government makes yet a different determination, that is, September 17, 1986 (transfer of the facility to IHS). The Court gives "much deference" to the first reasonable determination, that is the "then date" of March 31, 1984.

This is a case of first impression as none of the authorities cited by either plaintiff or defendant, involving two triggering events, specify how recovery was calculated or what "then date" was utilized as a basis on any calculation. In *United States v. St. John's General Hospital*, 875 F.2d 1064, 1066 (3rd Cir.1989), the Hill–Burton facility at issue ceased operation on December 31st, 1965 and over three years later on July 2nd, 1969, the facility was transferred to a "for-profit entity." The Third Circuit affirmed summary judgment in favor of the United States finding the all subsequent transferee defendants liable *in solido* for the original recovery amount demanded without specifying how recovery was calculated or which "triggering event" or "then date" was utilized as a basis of calculating the recovery amount.

The Parish aptly points out an important distinction in the *St. John's General Hospital* case—that is, in *St. John's* the Government had not determined the Hill–Burton recovery amount due prior to the sale of the facility, but rather had ordered the defendant to escrow a particular amount in anticipation of the sale of the facility. Here, the Government admittedly made a determination of the recovery amount due based on closure, and later elected to file its recovery claim based upon that original determination, despite the fact of its knowledge of transfer of the facility to IHS subsequent to its closure at the pertinent time.

As previously mentioned, nothing herein should be construed to inhibit the Government's election to pursue the subsequent transferee IHS and the Parish pursuant to § 291i(a)(1). Considering the submissions of the parties, the law, and the undisputed facts bearing on the Court's determination,

IT IS ORDERED that the Parish's Motion to Establish "Then Date" is GRANTED only to the extent that it seeks a judicial determination of March 31, 1984 as the "then date," the basis of any recovery amount calculation.

**1416**

LAW OFFICES OF

**LOCKE PURNELL RAIN HARRELL**

(A PROFESSIONAL CORPORATION

PAN AMERICAN LIFE CENTER
601 POYDRAS STREET•SUITE 2440
NEW ORLEANS•LOUISIANA 70130–6036
(504) 523–2800
TELECOPIER: (504) 523-5577

DALLAS OFFICE
2200 ROSS AVENUE•SUITE 2200
DALLAS•TEXAS 75201–6776
(214) 740–8000

VIA HAND DELIVERY

April 3, 1992

Hon. Charles Schwartz, Jr.
Judge, Section "A"
United States District Court
Eastern District of Louisiana
500 Camp Street
New Orleans, Louisiana 70130

      Re:  *United States of America v.*
          *St. James Parish, Louisiana*
          **No. 91–1951, Sect. "A", Mag. (3)**
          **United States District Court**
          **Eastern District of Louisiana**
          **Our File: 78771/98281**

Dear Judge Schwartz:

This morning, this office responded to two questions at your request through your Law Clerk assisting you in this matter. In order to be sure that the record of this matter contains the subject of this discussion, we felt it appropriate to respond to you in writing and set out our position for the plaintiff Government's counsel.

The Motion to Determine Then Date which has been submitted to Your Honor on behalf of St. James Parish requests the Court to determine that March 31, 1984, is the date that the Court will use to determine the "then value" of West St. James Parish Hospital for purposes of determining the federal recovery amount, if any. The plaintiff, United States of America, in opposing the motion, suggests that September 17, 1986, the date of the lease/sale transaction with a proprietary entity, is the appropriate date to determine the "then value". Your Law Clerk pointed out that the Government's claim based on the March 31, 1984, date, as stated in the original petition in this matter, is $621,000 while the Government's claim based on the September 17, 1986, date is $370,000. Because the Motion to Determine Then Date, on its face, may appear to seem as though we are arguing for a higher recovery figure, that is not really the case. The Law Clerk was essentially inquiring as to whether there were other motives behind the motion.

We indicated to the Law Clerk, based on information available to us, that the Government's claimed recovery amounts were completely inaccurate and would be shown to be unreliable as we have found through discovery and expert witnesses, and we are prepared to demonstrate the unsupportability of these figures at the trial of this matter. St. James Parish is firmly convinced that a March 31, 1984, then date will in fact result in a smaller recovery amount than would the use of a September 1986 then date.

The Law Clerk was also aware from the pleadings in this matter that one of the issues concerns whether St. James Parish is entitled to consideration of a "good cause" waiver. St. James Parish has consistently represented to the Court that because of the closure of the facility in March 1984, a "good cause" waiver should have been considered by the Government in this case. The Government, through pleadings filed in the matter, had taken the position that regardless of what may have happened prior to the lease/sale transaction, the fact that the lease/sale transaction had been entered into foreclosed the possibility of a "good cause" waiver. The Law Clerk was inquiring whether a motive for the Motion to Determine Then Date was to, in effect, bootstrap the "good cause" waiver argument onto the request to establish a then date of March 1984. We pointed out to

your Law Clerk that in the reply to the Government's opposition to the motion, St. James Parish indicated that it was not seeking to go beyond the "then date" question. This is particularly true with regard to the Government's argument that if the Court set a then date of March 1984, then the Government would loose its rights to pursue IHS. St. James Parish specifically disavowed any link between the then date and the Government's desire to pursue the subsequent transferee of the facility. Likewise, St. James Parish is prepared to accept the facts as they exist with regard to the "good cause" waiver, and is not suggesting to the Court that determining a then date of March 1984 would compel any different ultimate result on the "good cause" waiver defense asserted by St. James Parish.

With specific regard to the "good cause" waiver, on Wednesday, April 1, 1992, St. James Parish had the opportunity to depose G. Stephen Bowen, M.D., M.P.H., Director, Bureau of Health Resources Development, who is the person within DHHS who has the final authority to grant "good cause" waivers. During the deposition, Dr. Bowen specifically stated that, in his view, despite the position the Government has taken in pleadings previously filed in this case, the fact that the facility has been sold to an ineligible entity does not preclude consideration of a "good cause" waiver based on the circumstances as they existed prior to the lease/sale. You may recall that on January 27, 1992, the Government had nevertheless denied our repeated requests for a "good cause" waiver consideration. Last Wednesday afternoon, counsel for St. James, together with counsel for the Government, met with Mr. Jack Moss, the DHHS employee serving under Dr. Bowen, to specifically discuss DHHS requirements, criteria, and procedures for St. James Parish to qualify for a "good cause" waiver in this case as none of those directives have been noticed, explained or set out in the regulations or other writings accessible by the Parish. Both parties have committed to vigorously pursue these discussions to a possible resolution of this matter. Accordingly, because of the testimony elicited that the sale of the facility does not preclude consideration of a "good cause" waiver. The "good cause" waiver issue present in this litigation now appears to have no direct connection with the lease/sale of the facility, or with the Government's theory of recovery, or with the then date that the Court may establish in response to the Motion to Determine Then Date, but it at least has reopened settlement negotiations.

If the Court would find it useful to have either an informal conference with regard to the present status of the case and the issues raised in the Motion to Determine Then Date, or to set the motion for hearing, counsel for St. James Parish would be most pleased to accommodate the Court's wishes.

In the meantime, if there is any other additional information which the Court may request, St. James Parish would be most happy to oblige the Court.

With kindest personal regards, I remain,

Yours very truly,

Donna D. Fraiche

DDF/dab

cc: Mark Gallinghouse, Esquire
President Dale Hymel, St. James Parish

---

## ON MOTION FOR LEAVE TO FILE (SECOND AMENDED COMPLAINT)

This matter is before the Court again, this time on the Government's Motion for Leave of Court to file its Second Amended Complaint, ostensibly to undo the Court's prior order entered April 6, 1992 establishing the date of closure of St. James Parish's ("the Parish's") hospital [i.e., March 31, 1984] as the "then date"—that is, the date upon which any "Hill–Burton" recov-

ery calculation with respect to that facility should be premised. Defendant, the Parish has opposed the Government's Motion on precisely that basis and has set forth other reasons why the Government should not be allowed to amend its complaint for the second time including: (1) the representations of the Government steadfastly from the outset of these proceedings and prior thereto, that the Hill–Burton recovery amount demanded would be based upon the March 31st, 1984 closure date; (2) relying on same, the defendants' experts have prepared their reports based upon such representations; (3) certain prejudice will result particularly in regards to defendant's trial preparation efforts, unnecessarily increasing the cost of litigation, and effectively undoing the Court's prior order entered April 6, 1992 establishing closure of the facility as the "then date." The matter was set for oral hearing on Wednesday, April 15, 1992, but was submitted on the briefs.

▉ While the Court is well-aware that under the Federal Rules of Civil Procedures amendments to the pleadings shall be granted liberally, the trial date in this matter has been previously continued and reset for trial June 4, 1992 in order to accommodate the Government allowing it to amend its original complaint to add the transferee of the facility, IHS River Region Hospital ("IHS"), as party defendant and to state a claim pursuant to 42 U.S.C. § 291i(a)(1) as against both the Parish and IHS.

The Court agrees with Government's assertion that its First Amended Complaint, clearly seeks recovery of damages pursuant to 42 U.S.C. § 291i(a)(1), and therefore the necessity of any amendment in that regard via Second Amended Complaint eludes the Court. Moreover, apparently the Parish is not as concerned about the clarity of the record as the Government anticipated, since the Parish opposes Government's Motion for Leave to Amend

to make "the court record as clear as possible."[1]

If as the Government argues at page 2 of Motion for Leave to Amend that its Second Amended Complaint is merely a confirmation of that which is set forth in its First Amended Complaint, then there is no reason why the Court should grant its request for leave to file its second amended complaint, the Second Amended Complaint being merely repetitive of its First Amended Complaint. Such would clutter, rather than, clarify the record.

As to cut-off dates, by this Court's scheduling order entered February 25th, 1992, the Parish was required to deliver written expert reports to the Government "in no event later than 60 days prior to the pretrial conference date"[2] [i.e., no later than March 30, 1992]. This deadline has passed and the trial date is fast approaching. The Court heartily disagrees with the following off-hand assessment of the Government that: "the defendant's [the Parish's] ability to prepare for trial will not be prejudiced in any way, nor will any of the cut-off dates be affected."[3]

Considering the submissions of the parties and more particularly that (1) the record of these proceedings as it is currently constituted clearly reflects the Government's theory of liability as against the Parish and IHS is 42 U.S.C. § 291i(a)(1), and (2) that the date from which any recovery amount calculation should be computed is March 31, 1984 [i.e., the "then date"], any further pleading confirming same would only clutter the record and possibly serve to compound any perceived confusion,

IT IS ORDERED that the Government's Motion for Leave of Court to File a Second Amended Complaint for the purposes of confirming its theory of recovery already adequately reflected in First Amended Complaint and confirmed by this Court's

---

1. See, Government's Motion for Leave of Court to File Second Amended Complaint, at p. 1.

2. See, Court's Scheduling Order, entered February 25, 1992.

3. See, Government's Motion for Leave, at pp. 2–3.

order entered April 6, 1992 is DENIED as merely cumulative and wholly unnecessary.