**NATIONAL MEDICAL ENTERPRISES, INC.**

v.

**The UNITED STATES.**

**No. 92–476C.**

United States Court of Federal Claims.

June 9, 1993.

Patric Hooper, Los Angeles, CA, for plaintiff.

Shalom Brilliant, Washington, DC, with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

OPINION

YOCK, Judge.

This case comes before this Court on defendant's motion to dismiss. The plaintiff, National Medical Enterprises, Inc. (NME), seeks judicial review of an administrative liability determination by the Secretary of Health and Human Services (HHS)

pursuant to the Public Health Service Act, 42 U.S.C. § 291 *et seq.* (1988) (the Hill–Burton Act) and requests a refund of approximately $922,000 resulting from an alleged overpayment under the Hill–Burton Act. Plaintiff initially filed suit in the United States District Court for the Northern District of Texas, but the Government successfully sought dismissal of the suit, arguing that the United States Claims Court, now the United States Court of Federal Claims, possessed exclusive jurisdiction of this refund action under the Tucker Act, 28 U.S.C. § 1491 (1988). Although the plaintiff presently seeks judicial review and pursues a money judgment in this Court, the defendant now argues that the Court of Federal Claims lacks jurisdiction, or in the alternative, that the plaintiff has not stated a claim upon which relief can be granted, and thus that the action must be likewise dismissed in this Court. For the reasons given below, this Court grants the defendant's motion to dismiss for lack of jurisdiction and, in the interest of justice, orders the transfer of the instant case, pursuant to 28 U.S.C. § 1631 (1988), to the United States District Court for the Northern District of Texas.

### Facts

This dispute involves the Central Plains Regional Hospital (CPRH) in Plainview, Texas, and a grant issued under the Hill–Burton Act. The Hill–Burton Act authorizes loans and grants for the construction and modernization of nonprofit and publically-owned health facilities.

The Hale County Hospital Authority (Authority) planned and supervised the construction of the CPRH during the late 1960's. As a public not-for-profit entity, the Authority qualified as an eligible entity under the Hill–Burton Act for financial assistance. As such, the Authority applied for and received a $1,250,000 grant from the United States Government for the construction of the hospital facility in Plainview. Since completion of the facility in August of 1970, and through 1984, the Authority exercised full administrative and operating control of the CPRH.

However, in February of 1984, the Authority entered into a long-term lease agreement with NME, a for-profit hospital facility, for a twenty-five year term. Under the lease, NME assumed full operating control of the CPRH and accepted all obligations related thereto. Because of the transfer of the facility from a public to a private for-profit entity, however, the Hill–Burton Act authorized the recovery by the Federal Government of a proportionate share of the Hill–Burton construction grant money.

At 42 U.S.C. § 291i(a) (1988), the Act provides:

If any facility with respect to which funds have been paid under section 291f of this title shall, at any time within 20 years after the completion of construction or modernization—

(1) be sold or transferred to any entity (A) which is not qualified to file an application under section 291e of this title, or (B) which is not approved as a transferee by the State agency designated pursuant to section 291d of this title, or its successor, or

(2) cease to be a public health center or a public or other nonprofit hospital, outpatient facility, facility for long-term care, or rehabilitation facility,

the United States shall be entitled to recover, whether from the transferor or the transferee (or, in the case of a facility which has ceased to be public or nonprofit, from the owners thereof) an amount determined under subsection (c) of this section.

*Id.* § 291i(a). In the instant proceeding, the plaintiff's twenty year lease of the facility-at-issue constitutes a statutory transfer. *Crawford County v. Heckler,* 629 F.Supp. 328, 331 (W.D.Ark.1986). As such, section 291i(a) grants the United States the authority to seek recovery of Hill–Burton funds. *See United States v. Palm Beach Gardens,* 635 F.2d 337, 340–41 (5th Cir.) (finding no limitation period for a suit of recovery of Hill–Burton funds under the Act), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). In August of 1986, the Secretary of HHS thus instructed

NME, pursuant to 42 U.S.C. § 291i(a), to pay the sum of $1,766,906 in order to extinguish the Hill–Burton liability created by the transfer of the Hill–Burton facility from an eligible to an ineligible entity.

Although NME agreed to accept the financial liability created by the Hill–Burton Act, NME disagreed with the Secretary's determination regarding the *amount* of recovery that the Government was entitled to recover. As NME's letter dated August 29, 1986, in payment to the Government, in pertinent part stated:

> Enclosed is a check in the amount of $1,766,906 which represents full payment on the government's demand for the Hill–Burton liability relating to Central Plains Regional Hospital, Grant # TEX 367M. This payment is being made by and on behalf of Hale County Hospital Authority and National Medical Enterprises, Inc. and constitutes payments based on your demand letter dated August 4, 1986, to Mr. John C. Anderson, Chairman—Hale County Hospital Authority.

> Please be advised that this payment does not constitute acceptance of the Department's calculation regarding the Hill–Burton liability. National Medical Enterprises, Inc. *is in disagreement with* the government's methodology and final determination of *the amount due,* and fully intends to pursue negotiations with the department to finally determine the Hill–Burton liability; and if unable to reach mutual satisfactory agreement on this matter National Medical Enterprises, Inc. reserves the right to pursue any administrative or legal remedy available to it.

> It is my understanding that the acceptance of this check by the Department will cause interest to stop accruing as of August 28, 1986 * * *.

> In the near future I will be in contact with your office * * * [to] discuss our disagreement with your determination. [Emphasis added.]

Further, on October 17, 1986, a second NME letter to the Federal Government (HHS) reiterated that:

> I am writing in response to your letter dated September 5, 1986, acknowledging receipt of our check in the amount of $1,766,906, which represents the recovery claimed by the government against the above referenced facility. As you are aware, the payment of this amount was made *under protest* and National Medical Enterprises, Inc. [NME] is in disagreement with the government's methodology and final determination of the amount due. [Emphasis added.]

As grounds for the "protest," NME disputed both the methodology for calculation of the liability and the amount of liability. As for the dispute over the methodology, NME charged that the Secretary had to conform the means of calculation to the HHS publication, "Recovery Review Manual for Grants Provided Under Title VII of the Public Health Service Act." The failure to conform the calculations to this publication, plaintiff contends, constituted arbitrary and capricious conduct by the Secretary. As for the dispute over the amount, NME contended, as supported by an alleged independent appraisal, that the correct Hill–Burton liability totaled $844,051, or some $922,000 less than the sum calculated by the Secretary and paid under protest by NME. Despite these disputes pursuant to the payment, the Secretary nevertheless retained the entire sum. The Secretary of HHS did reconsider its liability determination but, on November 8, 1991, issued a final decision which reaffirmed the original determination of $1,766,906 in Hill–Burton liability against the plaintiff.

Following the final decision of the Secretary, NME brought suit for judicial review and refund in the United States District Court for the Northern District of Texas on January 10, 1992, arguing that the Secretary had acted arbitrarily and capriciously in calculating the liability pursuant to the Hill–Burton Act and HHS implementing regulations. In that proceeding, the United States filed a motion to dismiss for lack of subject matter jurisdiction, stating:

> In the instant case, Plaintiff's claim: (1) is against the United States; (2) well exceeds $10,000.00; and (3) is founded upon a federal statute, 42 U.S.C. § 291i.

As such, the claim meets the criteria set forth in 28 U.S.C. § 1491(a)(1), and exclusive jurisdiction therefore rests in the Claims Court.

In response, the plaintiff merely asserted federal question jurisdiction pursuant to 28 U.S.C. § 1331 (1988), making only glancing reference to an explicit statutory expression of district court jurisdiction contained in the United States Code at 42 U.S.C. § 291i(c) (1988). Apparently relying on the Government's jurisdictional argument, the District Court dismissed the case without prejudice, finding: "the court is of the opinion that this case is governed by 28 U.S.C. § 1491(a)(1); therefore, this court does not have jurisdiction over the subject matter of this case." *National Medical Enters., Inc. v. Sullivan,* No. 5:92–CV–009–C (N.D.Tex. July 1, 1992).

Following the dismissal by the District Court, on July 1, 1992, the plaintiff filed suit in this Court.

### Discussion

In the instant motion to dismiss, the Government makes two basic arguments. First, relying on a sovereign immunity/strict statutory construction defense, the Government contends that section 291i(c) of the Hill–Burton Act only contemplates a suit or claim *by the Government* (initiated in district court) to recover construction grant moneys from an ineligible facility. According to the Government, Congress nowhere contemplated that the health facilities could sue the Government in district court, nor could the facilities pay the amount demanded by the Government, and then pursue a refund action in this Court (or in the district court) pursuant to the authority contained in the Tucker Act. Since the Congress in passing section 291i(c) of the Hill–Burton Act *only* contemplated suits by the Government against the ineligible facilities, and not the other way around, the Government contends that sovereign immunity was only waived to that extent, and thus that this Court lacks jurisdiction to entertain this refund action by the plaintiff here. The Government's second argument in support of its motion to dismiss for lack of jurisdiction, rests on its contention that the plaintiff's claim is not based on any money mandating statute, or a contract, or an illegal exaction of money by the Government, and thus that the plaintiff's claim lacks the prerequisite for establishing jurisdiction under the Tucker Act.

For its part, the plaintiff opposes the Government's motion and argues that this Court has, at least, concurrent jurisdiction with the district courts to hear these Hill–Burton Act dispute cases in those instances in which a payment has already been made and a refund is now requested.

While the Court agrees with the defendant that this Court lacks jurisdiction over this plaintiff's Hill–Burton recovery claim, it reaches this conclusion for reasons entirely different from those proposed by the defendant.

### A. Jurisdiction

■ To begin with, this Court simply does not agree with the defendant when it argues that this Court lacks jurisdiction over the matter because the dispute is not based on a money mandating statute, a contract, or an illegal exaction of money. It is this Court's view that a strong argument could be made in support of jurisdiction in this Court based on any one of these three jurisdictional arguments. By far the strongest argument *for* jurisdiction, however, could be made that the recovered *amount* of money by the Secretary of HHS in this dispute is an illegal exaction. The Government in this case demanded too much in recovery, and it did not base that recovery on its own regulations and manuals, hence it is an illegal exaction, and thus jurisdiction resides in this Court, is the way the argument would run. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). A somewhat less compelling argument could be made that since the Hill–Burton Act recovery statute contemplates recovery against the original eligible grant*ee* and/or the new ineligible entity, that a contractual basis exists to support jurisdiction. *See* 42 U.S.C. § 291i(a). Likewise, it could be

quite persuasively argued that the Hill–Burton Act, when appropriately read in its entirety, mandates that the Government only recover from the grantee the amounts that its own regulation allow and therefore mandates that any excess be returned to the facility. *See Ralston Steel Corp. v. United States,* 169 Ct.Cl. 119, 125, 340 F.2d 663, 667, *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

However, it is counterproductive to dwell on these arguments because this Court clearly does *not* have jurisdiction over these matters in any event. This is so because Congress, in enacting the Hill–Burton Act, plainly and clearly placed jurisdiction to review these Hill–Burton disputes squarely in the district courts of the United States. *See John Muir Memorial Hosp., Inc. v. United States,* 221 Ct.Cl. 843, 846 (1979). The jurisdictional section of the Hill–Burton Act at issue states:

> (1) Except as provided in paragraph (2), the amount the United States shall be entitled to recover under subsection (a) of this section is an amount bearing the same ratio to the then value (as determined by the agreement of the parties *or in an action brought in the district court of the United States for the district for which the facility involved is situated*) of so much of the facility as constituted an approved project or projects as the amount of the Federal participation bore to the cost of the construction or modernization of such project or projects.

42 U.S.C. § 291i(c) (1988) (emphasis added). Thus, absent express agreement between the United States and the party from whom the United States seeks a Hill–Burton recovery, as the above emphasized language states, section 291i(c)(1) *expressly* provides for the determination of Hill–Burton liability in the "district court of the United States for the district for which the facility involved is situated."

It is at this point, of course, where the Government's argument diverges from this Court's position. As already stated, it is the Government's position that in enacting section 291i(c) of the Hill–Burton Act, Congress only waived sovereign immunity to the extent *that the Government could sue* a health facility for recovery in the district court of the United States in which the facility was located. The Government contends that the language of the statute simply does not allow the facility to first file an action in the district court, nor does the language permit a facility to pay the Government before suit and then seek a refund in the district court or this Court. The Government's jurisdictional position is thus based on the doctrine of sovereign immunity (it has not been waived to allow a suit by the facility) and on the doctrine of strict construction of jurisdictional statutes.

The Government's position is also wrong. It is much too narrowly focused. It is clear to this Court that Congress, in enacting the Hill–Burton Act, thought about whether there should be *judicial review* of these HHS decisions, and answered that question in the affirmative. Next, they thought about *where* these judicial reviews should be accomplished, and they answered that question by placing these actions in the district courts of the United States.

Although commonly sought prior to payment and generally initiated by the Government, the statutory language contained in 42 U.S.C. § 291i(c) neither states nor suggests *exclusive* applicability to pre- or post-payment disputes or obligee- or obligor-initiated suits. *See, e.g., United States v. St. James Parish,* 792 F.Supp. 1410, 1411 (E.D.La.1992) (pre-payment dispute initiated by Government); *Crawford County v. Heckler,* 629 F.Supp. 328, 329 (W.D.Ark. 1986) (pre-payment dispute initiated by the health facility); *United States v. First Georgia Bank,* 529 F.Supp. 384, 384 (N.D.Ga.1982) (pre-payment dispute initiated by Government); *United States v. Palm Beach Gardens,* 466 F.Supp. 1155, 1157 (S.D.Fla.1979) (pre-payment dispute initiated by Government), *rev'd on other grounds,* 635 F.2d 337 (5th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). All of these above-cited cases were, of course, commenced in the district courts of the United States where the facilities were located. It should also be emphasized, again, that at least

one, the *Crawford County* case, was initiated by the health facility and not by the Government.

Furthermore, while the District Court for the Northern District of Texas properly recognized that the Court of Federal Claims maintains exclusive jurisdiction over money claims in general against the United States pursuant to the Tucker Act, 28 U.S.C. § 1498,[1] the pivotal issue in the instant case is the *amount* of recovery and not the case's status as a refund suit. As such, the Hill–Burton Act leaves no discretion for this Court to decide the proffered issue, because the Act requires resolution over the *amount* of the Hill–Burton liability in the district court in the district in which the facility-at-issue involved resides. 42 U.S.C. § 291i(c). The Court of Claims has recited this rule of strict statutory construction:

> The consent to be sued is strictly construed. A statute consenting to suit in another tribunal is readily to be interpreted as withdrawing consent to suit in the Court of Claims [or, now, the Court of Federal Claims]. The doctrine of strict construction overrides the doctrine that repeals by implication are not favored. Where Congress wishes to preserve jurisdiction in the Court of Claims [or Court of Federal Claims] when later consenting to suit elsewhere, it is careful to say that Court of Claims [or Court of Federal Claims] jurisdiction survives, * * *.

*John Muir Memorial Hosp., Inc. v. United States*, 221 Ct.Cl. 843, 845–46 (1979) (citations omitted). Thus, even considering the recognition of jurisdiction over certain disputes under the Medicare Act by the Court of Claims and the Claims Court, as emphasized by the plaintiff, this Court maintains no jurisdiction over money claim matters (refunds) within the exclusive jurisdiction of another forum as provided by a statutory scheme, absent express language relating thereto. *Compare Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 58, 536 F.2d 347, 351 (1976) ("Where the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations; in other cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions.") (footnote omitted), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), *with Mount Sinai Medical Ctr., Inc. v. United States*, 13 Cl.Ct. 561, 565 (1987) ("While it is true that Congress has provided, in the years since *Whitecliff*, additional avenues of review; Congress did not preclude the functioning of *Whitecliff* in those now fortunately few instances where the Act is not applicable.").

Therefore, based on the clear intention of Congress, as expressed by 42 U.S.C. § 291i(c), this Court concludes that the present action challenging the amount of Hill–Burton liability properly rests in the district court.

## B. Transfer to the District Court

As already discussed, the defendant requests dismissal of the case in this Court. Where the Government argues that this Court maintains exclusive jurisdiction over a matter before the district court, and then once at this Court, the Government argues that this Court maintains no jurisdiction, the Claims Court has ruled that dismissal upon a finding of a lack of jurisdiction, in lieu of transfer or retransfer to the district court of origination, would "visit a manifest injustice" upon the plaintiff. *A & S Council Oil Co. v. United States*, 16 Cl.Ct. 743, 749 (1989).

---

**1.** This Court has long recognized the existence of an implied-in-fact contract where the Government demands and receives the payment of money, *Kirkendall v. United States*, 90 Ct.Cl. 606, 613–14, 31 F.Supp. 766, 769–70 (1940); *Hicks v. United States*, 23 Cl.Ct. 647, 652 (1991), and extended jurisdiction over claims for such monies wrongfully demanded by and paid to the Government, *Kirkendall*, 90 Ct.Cl. at 613–14,

31 F.Supp. at 769–70; *Swartz v. United States*, 14 Cl.Ct. 570, 573 (1988), but these recognitions of jurisdiction result only where Congress has not expressly placed jurisdiction in another forum, *John Muir Memorial Hosp., Inc. v. United States*, 221 Ct.Cl. 843, 845–46 (1979); *Mount Sinai Medical Ctr., Inc. v. United States*, 23 Cl.Ct. 691, 695 (1991).

In *Clark v. United States*, 229 Ct.Cl. 570 (1981), moreover, the Court of Claims recognized the inherent "unfairness" of the outcome proposed by the defendant. The Court of Claims held:

It is unfair to the litigant and leads to an unnecessary waste of money and judicial resources for the government to urge another court to dismiss a case on the ground that we have adequate jurisdiction to decide the issues and then, after the other court has transferred the case here, to seek dismissal on the ground of our lack of jurisdiction.

In the present case the district court's conclusion that this court has jurisdiction to grant plaintiff full relief followed the government's representation to that effect, and presumably to some extent was based upon it. We have now determined that we do not have that jurisdiction. In the circumstances, we conclude that rather than dismiss the case, as the government urges, retransfer of the case to the district court (for whatever action it considers appropriate) * * * would be in the interest of justice.

*Id.* at 576–77. Thus, even without reference to the doctrine of preclusion of inconsistent positions, or judicial estoppel,[2] this Court finds transfer of the present suit proper where this Court maintains no jurisdiction over the subject matter at issue.

Section 1631 of title 28 of the United States Code governs when this Court may

---

**2.** Judicial estoppel, or the doctrine of inconsistent positions "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Commissioner,* 861 F.2d 469, 472 (6th Cir.1988) (citing *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir.1982)). In contrast to the doctrine of issue preclusion, or collateral estoppel within the context of res judicata, *Young Engineers, Inc. v. ITC,* 721 F.2d 1305, 1314–15 (Fed.Cir.1983), judicial estoppel applies not only to positions on the merits but any procedural matter:

The 'prior success' requirement does not mean that the party against whom the judicial estoppel doctrine is to be involved must have prevailed on the merits. 'Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'

*Reynolds,* 861 F.2d at 473 (quoting *Edwards,* 690 F.2d at 599 n. 5). Moreover, in contrast to equitable estoppel which generally fails against the Government, *Heckler v. Community Health Servs. Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), judicial estoppel implicates dissimilar purposes. While "[e]quitable estoppel is designed to prevent undue hardship to one who has relied to his detriment on an earlier inconsistent position of his opponent," judicial estoppel dissuades similar action in the judicial process pursuant to "a knowing assault upon the integrity of the judicial system." *Reynolds,* 861 F.2d at 474. Applying judicial estoppel in *Reynolds,* the Sixth Circuit held: "we can perceive no reason why the [Government] should be allowed knowingly to take a position in one judicial proceeding, secure final judicial acceptance of that position, and then knowingly attempt to persuade a different court to accept a fundamentally inconsistent position." *Id.*

While this Court finds no Court of Claims precedent for application of judicial estoppel to the inconsistent positions proffered by the Government first in the district court and now here, the United States Court of Appeals for the Federal Circuit has suggested application of this doctrine among private party litigants. *Jackson Jordan, Inc. v. Plasser American Corp.,* 747 F.2d 1567, 1578–80 (Fed.Cir.1984) (dictum). *See also id.* at 1579 (setting forth the elements of judicial estoppel as representation, reliance, and prejudice). In *Hybritech Inc. v. Abbott Lab.,* 849 F.2d 1446, 1455 n. 26 (Fed.Cir.1988), moreover, the Federal Circuit expressly adopted the doctrine. *See id.* at 1453–54 ("[A] patent holder was not precluded from taking a position in a subsequent action inconsistent with a position taken in a prior action if the opposing party in the subsequent action fails to demonstrate either (1) personal reliance on the decision granted in the prior suit, (2) prejudice to its litigation of the issues in the present suit by reason of the decision in the prior suit, or (3) the patent holder's apparent misuse of the court."). In the instant case, the defendant made a "black to white reversal of position" on jurisdictional predicate between the district court and this Court, *Jackson Jordan,* 747 F.2d at 1579, and created an ostensible assault upon the "integrity of the judicial process." *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 666 (Fed.Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). Yet, although this Court finds all three elements of judicial estoppel present, the Federal Circuit has not yet adopted this doctrine as against the Government and, as this Court finds transfer back to the district court proper pursuant to the law-of-the-case doctrine, this Court does not choose to do so here. *See generally Aleutian Constructors v. United States,* 24 Cl.Ct. 372, 388–89 (1991) (considering, but rejecting, application of judicial estoppel against a contractor pursuant to *Jackson Jordan* and *Water Technologies*).

transfer a case to a district court. Section 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the *interest of justice,* transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added). In applying this statutory provision, the Court of Claims established the standard of whether transfer of a case to a district court would further the "interest of justice." *Moss v. United States,* 229 Ct.Cl. 837, 841 (1982); *Goewey v. United States,* 222 Ct.Cl. 104, 108, 612 F.2d 539, 541 (1979); *Busby School v. United States,* 8 Cl.Ct. 588, 595 (1985). When a district court has already considered and denied its own jurisdiction over a matter, however, application of the "interest of justice" standard resulted in a judicial preference against retransfer of the same case back to the district court of origination. *Berton Siegel, D.O., Ltd. v. United States,* 231 Ct.Cl. 895, 896 (1982). This preference relied, primarily, upon the futility of transferring (or retransferring) the same case to a district court which had already denied jurisdiction. *See Little River Lumber Co. v. United States,* 7 Cl.Ct. 492, 494 (1985) (denying retransfer, under the "interest of justice" standard, where "it most probably would be a futile act").

However, in *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the United States Supreme Court injected the "law-of-the-case" doctrine into the transfer/retransfer analysis. The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* at 816, 108 S.Ct. at 2177 (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). Citing the doctrine, the Supreme Court described:

> This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'
>
> [Respondent] is correct that the doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions. Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts. Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.

*Id.* (citations omitted). The law-of-the-case doctrine, however, defines no *per se* rule but "'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Id.* 486 U.S. at 817, 108 S.Ct. at 2178 (quoting *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)). As such, the Supreme Court recognized:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' *Arizona v. California, supra,* [460 U.S.] at 618, n. 8 [103 S.Ct. at 1391, n. 8] (citation omitted).

\*   \*   \*   \*   \*   \*

Situations might arise, of course, in which the transferee court considers the transfer 'clearly erroneous.' *Arizona v. California,* 460 U.S., at 618, n. 8 [103 S.Ct. at 1391, n. 8]. But as '[t]he doctrine of the law of the case is \* \* \* a

heavy deterrent to vacillation on arguable issues,' 1B Moore's ¶ 0.404[1], at 124, such reversals should necessarily be exceptional; courts will rarely transfer cases over which they have clear jurisdiction, and close questions, by definition, never have clearly correct answers. Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end.

*Id.*, 486 U.S. at 817, 819, 108 S.Ct. at 2178, 2179.

Pursuant to this stringent application of the law-of-the-case doctrine, the Claims Court initially applied the *Christianson* case narrowly. In *Rodriguez v. United States*, 13 Cl.Ct. 399, 401 (1987), *rev'd*, 862 F.2d 1558 (Fed.Cir.1988), the Claims Court dismissed, pursuant to the Tucker Act, and refused to retransfer, pursuant to the law-of-the-case doctrine, a tort case to the district court. However, in *Rodriguez v. United States*, 862 F.2d 1558, 1560 (Fed. Cir.1988), the Federal Circuit reversed the Claims Court retransfer decision, ruling that "there is no per se rule against return of a transferred case by the transferee court." Furthermore, the Court recognized the *Christianson* exception, or the "exceptional circumstance" exception, which applies to a (1) clearly erroneous transfer decision which would (2) work a manifest injustice. *Id.* Applying the exception to the facts of the case, the court concluded:

> We hold that the Claims Court erred in refusing to retransfer the case under the exception set forth in *Christianson.* The district court's transfer decision was clearly erroneous because the Claims Court lacks jurisdiction over claims sounding only in tort. 28 U.S.C.A. § 1491(a)(1). Further, to refuse retransfer would continue the manifest injustice created by the transfer decision in frustrating [plaintiff's] right to appeal the liability decision.

*Id.* (footnote omitted). Despite *Rodriguez* and the Court of Claims precedent, the Federal Circuit and the Court of Federal Claims continue to view the law-of-the-case doctrine narrowly. *See, e.g., Doko Farms*

*v. United States*, 861 F.2d 255, 256–57 (Fed.Cir.1988) (rejecting proffer of "clearly erroneous" standard if transfer decision is " 'plausible' in its entirety"); *Department of Natural Resources & Conservation v. United States*, 1 Cl.Ct. 727, 733–34 (1983) (rejecting proffer of exception to the law-of-the case doctrine because "[t]he 'plainly wrong' standard, which has also been defined as a 'clearly erroneous' test, is a very stringent one and applies only in 'exceptional circumstances' "). Nevertheless, applying the exceptional circumstance exception to the facts at bar, this Court finds no alternative but to order the transfer of the instant case to the district court of origination.

Under the first standard of the exceptional circumstance exception, this Court must consider the reason that the District Court dismissed the present dispute to ascertain whether that judgment constitutes "clear error." To do so, this Court has reviewed the motions, briefs, and other documents of the parties in the District Court wherein the United States Attorney moved the District Court to transfer this case to what is now the United States Court of Federal Claims. From a review of those documents, it is clear that neither party discussed the jurisdictional basis for the action that was proceeding in the District Court, *i.e.*, 42 U.S.C. § 291i(c). The Government simply moved to transfer the case, citing to our Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1), and argued that it was a garden variety monetary claim by the plaintiff over $10,000 and founded upon the Constitution, a statute, or a Government contract. The United States Attorney did not even cite, much less argue 42 U.S.C. § 291i(c), nor did he cite the District Court to any of the cases that had already been decided in and by the district courts pertaining to the Hill–Burton Act. Also, NME, in opposing the motion did not do much better. It simply argued that the district court had jurisdiction pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* (1988), and/or the federal question jurisdictional section, *i.e.*, 28 U.S.C. § 1331 (1988). Furthermore, the

short one page order of dismissal by the District Court refers only to the Tucker Act as grounds for the dismissal without prejudice (not transfer), and makes no mention of the statutory provisions of the Hill–Burton Act at all. In light of these circumstances, this Court can only conclude that the District Court inadvertently ignored the clear mandate for district court jurisdiction contained in 42 U.S.C. § 291i(c) in ascertaining the proper forum for resolution of this Hill–Burton liability dispute. Therefore, in the opinion of this Court, and for the reasons already outlined herein, the dismissal of this action in the District Court was in clear error.[3] Section 291i(c) makes the clear assignment of jurisdiction over Hill–Burton disputes to the district courts, and this Court finds any ruling to the contrary as clearly erroneous.

Under the second standard of the exceptional circumstance exception, this Court must determine whether refusal to transfer the instant case to the District Court would result in a "manifest injustice." In doing so, this Court takes notice that, should it grant the motion to dismiss and not re-transfer the proceeding to the district court of origination, the plaintiff would remain without a forum for judicial review. Were there no guidance on what constitutes a "manifest injustice," this Court would face a jurisprudential quandary. On the one hand, this Court recoils at leaving the plaintiff without a forum to litigate a claim; on the other hand, this Court is bound by "[t]he age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Christianson,* 486 U.S. at 818, 108 S.Ct. at 2179. Under the circumstances of this case, however, the Claims Court has already held it is a "manifest injustice," *A & S,* 16 Cl.Ct. at 749, and "unfair to the

litigant and leads to an unnecessary waste of money and judicial resources for the government to urge another court to dismiss a case on the ground that we have adequate jurisdiction to decide the issues and then, after the other court has transferred the case here, to seek dismissal on the ground of our lack of jurisdiction," *Clark,* 229 Ct.Cl. at 576. Thus, pursuant to *A & S* and *Clark,* this Court finds the retransfer of the instant proceeding to the district court as appropriate and proper. *See American Lifestyle Homes, Inc. v. United States,* 17 Cl.Ct. 711, 716 (1989) ("Although neither party moved for a transfer, * * * [f]inding that jurisdiction may lie in the district court, this court determines retransfer to be appropriate.").

Therefore, relying on the foregoing authorities, this Court finds a sufficient ground under the "exceptional circumstances" exception for transfer and return of the instant proceeding to the district court of origination.

### CONCLUSION

For the reasons stated above, this Court grants the defendant's motion to dismiss for lack of jurisdiction but, pursuant to 28 U.S.C. § 1631, directs the Clerk to transfer the instant case to the United States District Court for the Northern District of Texas for a final determination of the amount of Hill–Burton liability in conformity with 42 U.S.C. § 291i(c) and, thus, resolution of the case at bar.

No costs.

---

**3.** By describing the finding of the District Court as clearly erroneous, this Court makes clear that it does not attempt to construe the jurisdictional boundaries of that court but only ascertains the jurisdictional scope of this tribunal. As the Supreme Court ruled in *Christianson,* upon a finding of lack of jurisdiction, a court has but a single decision—"whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court * * * that has jurisdiction." *Christianson,* 486 U.S. at 818, 108 S.Ct. at 2179. Because this

Court has no authority to hear the instant dispute, in light of the specific statutory authorization of district court jurisdiction pursuant to 42 U.S.C. § 291i(c), this Court finds no alternative but to retransfer the instant case. *See A & S,* 16 Cl.Ct. at 750 ("Since * * * the District Court's transfer decision was 'clearly erroneous because the Claims Court lacks jurisdiction * * *,' we are constrained to retransfer subject case * * *.").