A & S COUNCIL OIL COMPANY, INC., et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 364–88C.

United States Claims Court.

April 28, 1989.

Julius E. Mensah, Indianapolis, Ind., Atty. of Record, for plaintiffs.

Richard P. Nockett, Washington, D.C., with whom was Asst. Atty. John R. Bolton, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Preliminary Matter*

This memorandum opinion addresses the following two mutually exclusive motions:

(i) Defendant's Motion to Dismiss; and

(ii) Plaintiff's Motion to Transfer.

Previously, on or about July 17, 1987, subject plaintiffs filed a complaint in the United States District Court for the District of Columbia praying for a declaratory judgment and monetary damages in the amount of $15,000,000 against the Administrator, Associate Administrator, and the United States Small Business Administration. Premised on an opinion dated March 1, 1988, said case was ordered transferred to this court for the alleged reason that "plaintiffs are clearly seeking money damages for loss of profits," and further that the District Court lacks jurisdiction over such monetary claims in *excess* of $10,000. 28 U.S.C. § 1346(a)(2).

On June 22, 1988, said District Court's record was transferred to this court, and following thereon, *i.e.*, on August 3, 1988, plaintiffs filed their complaint in this court. Plaintiffs' "Prayer For Relief" in the complaint in the District Court and in this court was *in haec verba* identical.

Both parties agree, in their respective motions, but for different reasons, that the U.S. Claims Court does *not* have jurisdiction, given the averments in the complaint. Defendant avers that, in the present posture of this case, this court is without jurisdiction because (i) plaintiffs never submitted their $15,000,000 claim for damages to a contracting officer for a final (or deemed final) decision, 41 U.S.C. § 605(a); and (ii) plaintiffs' claim, therefore, for declaratory relief would *not* be properly before this court in the absence of a contracting officer's decision (or deemed decision), on a claim for money damages, in view of the limited jurisdiction of this court.

Plaintiffs, on the other hand, concede, even without regard to the jurisdictional issue raised by the failure to submit the claim to the contracting officer, that their claim(s) are "not cognizable under the Contract Disputes Act," in any event. But rather, they aver that the District Court "has jurisdiction over monetary claims against the SBA regardless of the amount in controversy." *Mar v. Kleppe*, 520 F.2d 867, 871 (10th Cir.1975). Finally, plaintiffs contend that in the District Court they sought "monetary damages only against the SBA" and that, therefore, they were properly before the U.S. District Court for the District of Columbia pursuant to 15 U.S.C. § 634(b). Therefore, plaintiffs argue that this case should, in the interest of justice, be retransferred to the U.S. District Court for the District of Columbia.[1]

---

1. 28 U.S.C. § 1631 provides as follows:
   Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ...

In response to plaintiffs' transfer motion, defendant urges this court *not* to retransfer for the simple reason that it is not "in the interest of justice" to do so because that action could *not* have been brought in the District Court in view of that court's March 1, 1988 adverse opinion. Moreover, says defendant, the District Court's determination regarding no jurisdiction is now final in view of plaintiffs' failure to appeal.

While we find that in its present posture it is clear, beyond cavil, that this court is without jurisdiction, nevertheless, for the reasons delineated hereinafter, we are of the opinion that the interest of justice requires that this case be retransferred to the U.S. District Court for the District of Columbia.

*Background Facts*

Plaintiffs, A & S Council Oil Company, Inc. (Council Oil), L.H. Smith Oil Corporation (Smith Oil), and Williams Fuel Oil Service, Inc. (Williams Fuel) are all vendors of petroleum products which had received subcontracts for the supply of fuels to defense agencies pursuant to section 8(a) of the Small Business Act, 15 U.S.C. § 637(a).[2]

In their complaint in this court, plaintiffs' sole actionable contention is that:

[T]he Administrator of the Small Business Administration exceeded his statutory authority and acted arbitrarily and capriciously, in disregard of plaintiffs' rights and interests under section 8(a), *by entering into a certain blanket pricing agreement with the Defense Logistics Agency,* which agreement determined the prices to be paid to section 8(a) petroleum products distributors for supplies to most federal installations.

Further ... the conduct of the Administrator [*et al.*] in entering and implementing the agreement contravened the purpose and intent of the section 8(a)

legislation. In derogation of the stated mission of the [SBA] to promote the competitive viability of socially and economically disadvantaged small business concerns through the section 8(a) program, the Administrator [*et al.*, has] helped to create and perpetuate a group of minority-owned businesses in a particular industry which are ... in worse financial condition than if they had not participated in the section 8(a) program.

(emphasis added).

That "certain blanket pricing agreement," *supra*, is styled *"Memorandum of Agreement/Domestic Post Camp and Station Ground Fuel Section 8(a) Contracting Procedure* (Interagency Agreement) and was entered into on or about December 5, 1979. Thereafter, and between December 5, 1979 and July 17, 1985, said agreement was "applied by DLA to all DFSC acquisitions of ground fuels from 8(a) firms" such as plaintiffs herein. In short, it provided a methodology for determining *prices to be paid* by the federal government (DLA) for petroleum products supplied by section 8(a) firms under subcontracts with the SBA, such as plaintiffs herein. Thereunder, a section 8(a) contracting firm would receive that "price per gallon no higher than the price determined by DFSC to be the fair market price (FMP) under the terms of the Interagency Agreement." Said price was the "highest award price" under the *competitive* solicitation for like products within the section 8(a) firm's commercial market area. That is to say, the "highest award price" is equivalent to the price submitted by the *lowest* non-section 8(a) bidder under a competitive solicitation. To avoid transaction losses under the section 8(a) program, given the foregoing, a qualified participant had to obtain the petroleum products from its suppliers and provide transportation and over-

---

could have been brought at the time it was filed....

**2.** Otherwise known as the section 8(a) program, 15 U.S.C. § 637(a) establishes the duty on the Small Business Administration (SBA) to aid and promote the competitive viability of businesses owned by individuals who have been subjected to racial or ethnic prejudice and whose limited

access to capital and credit has impaired their ability to compete in our free enterprise system. Such qualified entities, otherwise known as "socially and economically disadvantaged business concerns," are eligible to receive support assistance from the SBA by which certain federal procurements are "set aside" for performance by any such qualified businesses.

head at an *aggregate* cost no greater than the FMP paid by the *lowest competitive bidder*. No mitigating procedure was available under the program to modify the FMP once a qualified entity accepted a section 8(a) subcontract from SBA.

Williams Fuel, on September 17, 1982, was the initial petitioner to enter into a subcontract (# 3–82–2–3776) with the SBA with reference to contract # DLA600–84–D–4820 dated August 9, 1982, between the SBA and DFSC. That subcontract required Williams Fuel to supply 2,513,000 gallons of petroleum products for a period through July 31, 1983. A $450,000 bank line of credit was provided Williams Fuel to facilitate performance under the contract. This line of credit is in default to the extent of $156,000, arguably, due to the so-called "FMP" paid to Williams Fuel for the petroleum sold to DLA.

Thereafter, on October 6, 1982, Smith Oil similarly entered into a subcontract (# SB5108(a)82–C215) with SBA on contract # DLA600–82–D–4994, dated September 3, 1982, between SBA and DFSC. This contract was for the supply of 15,900,000 gallons of petroleum products for a period through July 1983. The SBA advanced Smith Oil $2,500,000 to assist in its performance. However, it is claimed by Smith Oil that it experienced a deficit of $235,000 following repayment of the advancement due to the "FMP" paid pursuant to the Interagency Agreement.

Council Oil likewise entered into a subcontract (# 4–84–1–0175) on April 13, 1984, with the SBA with respect to contract # DLA600–84–D–4045, dated March 28, 1984, between the SBA and DFSC. The supply of 5,550,000 gallons of petroleum was to be supplied under this contract. Council Oil advised the SBA on December 13, 1984, that it would cease deliveries as of January 1, 1985, because the unit prices (FMP) placed it in a losing position, and in fact it experienced a cash loss of $49,-261.00, and DFSC cannot renegotiate the contract. While SBA requested DFSC to terminate said contract for convenience, at no cost to either party, said contract was terminated for default on May 10, 1985. The contracting officer's final decision with respect thereto was received on May 16, 1985. Council Oil appealed the decision on August 15, 1985, to the Armed Services Board of Contract Appeals which appeal was filed *92* days after May 16, 1985. The Board, therefore, dismissed the appeal because it was not filed within 90 days, as required.

Council Oil then, on October 4, 1985, submitted a claim in the amount of $48,-840.00 allegedly for losses incurred as a result of contract performance. On April 2, 1986, the contracting officer issued a final decision denying said claim.[3]

*The Complaint*

Plaintiffs' complaint, consisting of 91 numbered paragraphs, contains six counts and a final section praying for specific relief as follows:

*Count I* avers that—the Interagency Agreement is a rule within 5 U.S.C. § 551(4); it was subject to the rule-making provisions of 5 U.S.C. § 553; it was adopted without prior publication in the Federal Register and notice and opportunity to comment; and it is, therefore, void as a matter of law for failure to comply with 5 U.S.C. § 551 *et seq.*, the Administrative Procedure Act (APA);

*Count II* avers that—the procurement of supplies and services by DLA was governed by DAR 32 C.F.R. § 1–100 *et seq.;* DAR §§ 1–108 and 1–109 provides for DLA to adopt policies and procedures which supplement DAR; DLA failed to obtain the required approval prior to adopting said agreement which action (failure) was arbitrary, capricious, and an abuse of discretion; and said action has adversely affected plaintiffs;

*Count III* avers that—the pricing under the Interagency Agreement, based upon the lowest possible cost was violative of DAR § 1–705.5(b)(2) [July 1979] which per-

---

**3.** There is no evidence that said $48,840.00 claim was appealed to this court or to the Board, and any issues raised by that contract claim to and denied by the contracting officer are final and cannot now be appealed. *See* 41 U.S.C. § 609(a).

mits FMP to be "predicated on the basis of likely costs under normal competitive conditions";

*Count IV* avers that—the DAR § 1–705.5(c)(1)(L)(ii) [July 1979] formula for determining FMP under section 8(a) regarding items with a repetitive purchase history allows for price adjustments, upward or downward, to reflect consideration for an "unrealistically low contract price" *et seq.;* however, the Interagency Agreement *limited* the authority of the agency's contracting officer in determining FMP on a case-by-case basis by considering certain DAR, *supra,* factors; and plaintiffs were thus adversely affected by DLA's negotiating and implementing the agreement;

*Count V* avers that—the regulations implementing section 8(a) under the SBA (*i.e.,* 13 C.F.R. § 124) contemplated a policy to provide "prices which are fair and reasonable to the ... subcontractor" and "will enable a company to perform the contract and earn a reasonable profit." (*See also* Standard Operating Procedure (SOP) § 80.05); and that the negotiation and implementation of the Interagency Agreement by SBA was arbitrary and caused plaintiffs to be adversely affected; and

*Count VI* avers that—the Small Business Act does not authorize the Administrator or Associate Administrator to enter into "agreements fixing prices to be paid" to subcontractors under the section 8(a) program, and that the act of the SBA in negotiating and implementing the Interagency Agreement was in excess of their statutory authority, thus adversely affecting plaintiffs.

The prayer by plaintiffs seeks a declaratory judgment to the effect that—(i) the Interagency Agreement is void; (ii) the conduct of defendant in negotiating and implementing said agreement is arbitrary, capricious, an abuse of discretion, or not in accordance with law; and (iii) that the Administrator(s) of the SBA exceeded their authority in negotiating and implementing said agreement. For such alleged illegal conduct, adversely affecting plaintiffs, they also seek an award of damages in the amount of $15,000,000.

While under their complaint plaintiffs did not aver jurisdiction in this court based on 28 U.S.C. § 1491 and 41 U.S.C. § 601 *et seq.,*[4] defendant nevertheless predicated its motion to dismiss on the theory that "[this] court lacks jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.*[5] And, rather than responding, in opposition to defendant's motion to dismiss, there was filed plaintiffs' motion to transfer to the District Court in which it was argued that:

This court lacks jurisdiction over this action because plaintiffs' claim is not cognizable under the Contract Disputes Act, and pursuant to 28 U.S.C. § 1346(a)(2) the district courts ... have jurisdiction over monetary claims against the SBA regardless of the amount in controversy.

We will discuss each contention seriatim.

*Discussion*

■ We begin our analysis by observing that it requires little discussion to warrant the grant of defendant's motion to dismiss *on the assumption* that plaintiffs' complaint is grounded on the CDA. Section 605(a), Title 41 U.S.C. requires that:

All claims by a contractor against the government relating to a contract shall be in writing and *shall* be submitted to the contracting officer for a decision.... The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor....

---

4. Plaintiffs' jurisdictional averments in this court were the Small Business Act, 15 U.S.C. § 631 *et seq.;* the Armed Services Procurement Act, 10 U.S.C. § 2301 *et seq.;* 28 U.S.C. § 1337; the Little Tucker Act, 28 U.S.C. § 1346(a)(2); the APA, 5 U.S.C. § 702 *et seq.;* and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. In briefing the jurisdictional issue, defendant addressed *only* the question of plaintiffs' failure to file a claim with the contracting officer. Not surprisingly, it did not address the jurisdictional issue that would surface, on these same facts, upon the filing of an efficacious claim and an appeal here from an adverse decision.

(emphasis added). Failing the submission of such a claim in writing which must be certified if the claim is in excess of $50,000.00, and failing a contracting officer decision or deemed decision, there can be no direct access jurisdiction in the Claims Court. *Thoen v. United States*, 765 F.2d 1110 (Fed.Cir.1985); 41 U.S.C. § 605(c). This is so simply because the submission of an appropriate claim is a jurisdictional prerequisite under the CDA. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 645 F.2d 966, 977 (1981). It is indisputable, in the case at bar, that no claim for $15,000,000 was filed at any time by the plaintiffs. This fact is adequately corroborated by plaintiffs' judicial admission that the claim at bar "is not cognizable under the Contract Disputes Act."

■ Given the plaintiffs' prayer for declaratory relief, and absent jurisdiction in this court of a viable supporting money claim, the next question is—whether this court has jurisdiction to grant said requested declaratory relief. It is well settled that the Claims Court's limited jurisdiction allows for the grant of declaratory relief *only* where there is a pending jurisdictionally viable claim for money damages. Therefore, since on the facts here this court is without jurisdiction to grant money damages under the CDA, it is also without jurisdiction to grant declaratory relief. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). We are, therefore, without jurisdiction to hear this case under the CDA. *Thoen v. United States*, 765 F.2d at 1116, and *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed. Cir.1985).

Next, we address plaintiffs' contention that, notwithstanding the previous transfer of this case to this court by the District Court for the District of Columbia, said District Court has jurisdiction over the monetary claims averred against the SBA and its administrators regardless of the amount in controversy. 15 U.S.C. § 634(b). In addressing this issue, it is appropriate to begin with the allegations in plaintiffs' complaint, *supra*. As previously noted, the complaints filed in the District Court for the District of Columbia and the Claims

Court were identical in all material particulars. It is further observed that—the complaint filed in this court did not premise jurisdiction on 28 U.S.C. § 1491 nor on 41 U.S.C. § 601 *et seq.*, but rather jurisdiction was bottomed on other federal statutes—*see* note 4, *supra;* all of the alleged conduct complained of and which allegedly caused injury to plaintiffs occurred *no less than* 30 (and as much as 52) months *prior* (*i.e.*, on or about December 5, 1979) to the time that the first and last section 8(a) contract (*i.e.*, Williams Fuel in September 1982 and Council Oil on April 13, 1984) were entered into with the SBA; our analysis indicates that each of the six counts, *supra*, aver that it was the *pre*–1980 conduct by the SBA, *et al.*, that caused injury to the plaintiffs for which they pray for a declaratory judgment and $15,000,000 in damages; nowhere in said complaint do plaintiffs seek damages stemming from contract performance or non-performance; plaintiffs admit that they "have not presented any dispute with [DFSC] regarding the administration of their section 8(a) contracts"; and that plaintiffs merely seek damages for alleged illegal conduct occurring in and around October 1979 when the Interagency Agreement was executed, which injuries were subsequently quantified after entering into the contracts. In fact, they pointedly contend that it was that specific and "certain blanket pricing agreement ... between SBA and the [DLA that] effectively denied them the opportunity to obtain reasonable [profit] margins under their Section 8(a) contracts, and as a consequence, caused them economic harm" (Pltfs' Motion to Transfer, pp. 2–3).

Notwithstanding the foregoing, the District Court for the District of Columbia concluded that jurisdiction with respect to the subject case belongs in the U.S. Claims Court because "injury to plaintiffs occurred because of their contracts with the government ... under the Tucker Act and the Contract Disputes Clause." It is difficult to see how such specific averments, relating to *pre*–1980 conduct of the agency, which allegedly caused the injury to plaintiffs, can be said to have "occurred because

of their contracts with the government." To bottom plaintiffs' claims primarily on the contracts, on these facts, is akin to proceeding on a "but for" hypothesis.

■ Before the District Court, the government argued that plaintiffs' claims are *essentially* disputes relating to their section 8(a) contracts. This strains credulity where there, as here, *supra,* plaintiffs' averments as to damages stem solely and exclusively from the act of the SBA entering into and implementing the terms of the Interagency Agreement which allegedly "effectively denied them the opportunity to obtain reasonable margins under their section 8(a) contracts, and as a consequence, caused them economic harm" (Pltfs' Motion to Transfer, p. 3). In short, plaintiffs' claim is simply that they were injured by said agreement long before the section 8(a) contracts were entered into, *i.e.,* at least by 30 months, and that the pleading of the section 8(a) contract is *not* a contractual jurisdictional averment, but rather:

> [T]hose contracts are denominated in the complaint for the purpose of illustrating one of several harms plaintiffs allege they suffered through the application of the Interagency Agreement ... [which is] a perceptible argument for review of agency action in the district court.

(Pltfs' Motion to Transfer, pp. 7, 8). It is pointedly asserted by plaintiffs that jurisdiction is proper in the District Court under 15 U.S.C. § 634(b) without regard to the amount in controversy. Thus, the impediment of 28 U.S.C. § 1346(a)(2) is inapposite because it does not appear, on these facts, that "their case is essentially a [disguised] contract [Tucker Act claim]," which seeks an APA challenge to an interagency agreement.

■ Generally, whether a case should be transferred to a district court lies within the sound discretion of the court and the basic test to be applied is whether it would be in the "interest of justice" to do so. *Busby School of the Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 588, 595 (1985). In that connection, we believe the foregoing discussion illustrates, at the very least, a colorable cause of action in the District Court. Thus, we believe it would visit a manifest injustice on plaintiffs for this court to dismiss this action, as defendant prays. Pertinent to the foregoing is the observation of Judge Friedman in *Clark v. United States,* 229 Ct.Cl. 570, 576-77 (1981):

> It is *unfair to the litigant* and leads to an unnecessary waste of money and judicial resources for the government to urge another court to dismiss a case on the grounds that we have adequate jurisdiction to decide the issues and then, after the other court has transferred the case here, to seek dismissal on the ground of our lack of jurisdiction.
>
> In the present case the district court's conclusion that this court has jurisdiction to grant the plaintiff full relief followed the government's representation to that effect, and presumably to some extent was based upon it. We have now determined that we do not have that jurisdiction. In the circumstance, we conclude that rather than dismiss the case, as the government urges, retransfer of the case to the district court (for whatever action it considers appropriate) ... would be in the interest of justice.

(emphasis added).

More pointedly, we believe, is the recent decision of *Rodriguez v. United States,* 862 F.2d 1558 (Fed.Cir.1988), in which the court observed that said Claims Court "incorrectly analyzed Rodriguez' motion to retransfer, treating it as a motion to transfer an action originally brought in the Claims Court." In reversing *Rodriguez,* the Court of Appeals for the Federal Circuit held that while "a transfer order should not be reviewed by the transferee court where such review would undermine the benefits of the 'law of the case' rule, there is no per se rule against return of a transferred case by the transferee court."

The foregoing rule was predicated on the "exceptional circumstances" test implicit in *Christianson v. Colt Indus. Operating Corp.,* —— U.S. ——, 108 S.Ct. 2166, 2177-78, 100 L.Ed.2d 811 (1988), when the transfer decision was "clearly erroneous and would work a manifest injustice." *Id.*

Since there, as here, the District Court's transfer decision was "clearly erroneous because the Claims Court lacks jurisdiction over [the claims averred in the complaint]," we are constrained to retransfer subject case on the basis of the foregoing authorities.

*Conclusion*

We, therefore, deny defendant's motion to dismiss, grant plaintiffs' motion to transfer, and direct the Clerk to retransfer this case to the U.S. District Court for the District of Columbia.

IT IS SO ORDERED.